# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| WALTER J. BRZOWSKI, M29120, ) | |
| ) | |
| Petitioner, ) | |
| ) | Case No. 14-cv-4014 |
| v. ) | |
| ) | Judge Robert M. Dow, Jr. |
| THOMAS A. SPILLER, Warden, ) | |
| Pinckneyville Correctional Center, ) | |
| ) | |
| Respondent. ) | |

## MEMORANDUM OPINION AND ORDER

Petitioner, an Illinois state prisoner, seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Before the Court are the state's motion to dismiss [27] for failure to exhaust state court remedies; Petitioner's motion to strike the state's motion to dismiss as untimely [30]; Petitioner's motion for release on bond [50]; and Petitioner's "Motion for Expedited, Compelled Summary Ruling" [54]. For the reasons stated below, the Court grants the state's motion to dismiss [27] and denies Petitioner's three motions [30, 50, 54].

**I.   Background**

In 2012, Petitioner was convicted of two counts of violating an order of protection in two separate Will County cases. See Case Nos. 10 CF 1923 and 10 CF 2494. The Circuit Court imposed a sentence in Case No. 10 CF 1923 on May 4, 2012 and a sentence in Case No. 10 CF 2494 on June 1, 2012. Together, the two sentences call for a four-year prison term. Petitioner directly appealed these convictions, both of which remain pending almost three years later.

### A. Case 376

Petitioner filed a notice of appeal in Case 376 in May 2012. Case 376, Dkt. Hist. at p. 2. From July to October 2012, the Appellate Court, on its own motion, granted the court reporter three extensions to file the reports of proceedings, which were 2,425 pages long. *Id.* at [3-5]. From November 2012 to February 2014, Petitioner, represented by the Office of the State Appellate Defender ("OSAD"), requested eight extensions to file his opening brief, all of which the Appellate Court granted. See *id.* at [8, 10, 13, 16-20]. OSAD filed its opening brief in March 2014. *Id.* at p. 2. The state requested one extension, *id.* at [22], filing its brief in July 2014, *id.* at [24]. The case was ready for oral argument by August 2014. *Id.* at p. 3. That same month, Case 376 was consolidated with Case 477 for oral argument by agreed motion of the parties. *Id.* at [27]. OSAD declined to waive oral argument, and, on August 19, 2014, the Appellate Court indicated that it would schedule the case for oral argument on the next available docket call. *Id.* at [28].

### B. Case 477

Petitioner filed a notice of appeal in Case 477 in June 2012. See Case 477, Dkt. at p. 2. From July 2012 through January 2013, the Court granted the court reporter five extensions to file the reports of proceedings, which totaled 2,790 pages. *Id.* at [3, 5-8]. OSAD requested and received six extensions to file Petitioner's opening brief, encompassing a period of approximately one year from March 2013 through March 2014. *Id.* at [10, 12-18]. The state filed its brief in September 2014, *id.* at [20], after two extensions, *id.* at [17, 18]. OSAD then filed Petitioner's reply brief in October 2014, *id.* at 2, and Petitioner again declined to waive oral argument. That same month, the Appellate Court indicated that the case would be scheduled for oral argument on the next available docket call. *Id.* at [22].

### C. Habeas Petition to the Illinois Supreme Court

Petitioner filed a *pro se* habeas petition with the Illinois Supreme Court. See *People v. Brzowski*, No. M13061 (Ill. 2012). The Court denied his motion on November 28, 2012 without reaching the merits.

### D. Federal Habeas Petitions

Petitioner has filed at least two *pro se* federal habeas petitions. His first petition, filed in December 2012 in the Central District of Illinois, was dismissed in June 2013 for failure to exhaust state court remedies. *Brzowski v. Austin*, 2013 WL 3199835 (C.D. Ill. June 24, 2013). Petitioner filed his current petition in the Central District of Illinois in January 2014. His amended petition appears to allege that the trial courts lost jurisdiction when they improperly denied his motions to substitute judges. After the Central District of Illinois transferred the case to this district pursuant to § 2254's venue provision, the state again moved to dismiss Petitioner's petition for failure to exhaust state court remedies.

## II. Standard of Review

Generally, a court may not grant an application for a writ of habeas corpus unless a petitioner "has exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A). The exhaustion doctrine "is designed to give the state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999); see also *Bintz v. Bertrand*, 403 F.3d 859, 863 (7th Cir. 2005). It "serves an interest in federal-state comity by giving state courts the first opportunity to address and correct potential violations of a prisoner's federal rights." *Perruquet v. Briley*, 390 F.3d 505, 513 (7th Cir. 2004) (citing *Picard v. Connor*, 404 U.S. 270, 275 (1972)). The exhaustion requirement therefore requires a state prisoner to give state courts

3

"one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan*, 526 U.S. at 845; see also *Bintz*, 403 F.3d at 863; *Lewis v. Sternes*, 390 F.3d 1019, 1025 (7th Cir. 2004). Relevant here, it requires a petitioner to present each claim on direct appeal to the Illinois Appellate Court. If a petitioner has not exhausted the available state remedies, a district court typically dismisses "his habeas petition without prejudice so that the petitioner may return to state court in order to litigate the claim." *Perruquet*, 390 F.3d at 514.

Section 2254 creates two exceptions to the exhaustion requirement: (i) where "there is an absence of available State corrective process" and (ii) where "circumstances exist that render such process ineffective to protect the rights of the applicant." 28 U.S.C. § 2254(b)(1)(B). When a delay in the state court process is both inordinate and unjustifiable, it is ineffective within the meaning of § 2254. *Sceifers v. Trigg*, 46 F.3d 701, 704 (7th Cir. 1995); *Lowe v. Duckworth*, 663 F.2d 42, 43 (7th Cir. 1981); *Dozie v. Cady*, 430 F.2d 637, 638 (7th Cir. 1970) (considering a seventeen-month delay inordinate). Older Seventh Circuit case law held that where a delay was inordinate, a district court must hold a hearing to determine whether the delay was justifiable. See *Lowe*, 663 F.2d at 43; *Dozie*, 430 F.2d at 638. More recent decisions, however, instruct that a hearing is unnecessary where the record indicates that a petitioner or petitioner's counsel delayed a state post-conviction proceeding. In *Lane v. Richards*, 957 F.2d 363 (7th Cir. 1992), the Seventh Circuit found a hearing unnecessary where a petitioner's lawyer caused a five-year delay in the state post-conviction proceedings by repeatedly requesting continuances. *Lane*, 957 F.2d at 365 ("The reason for the delay is no mystery, so we do not need a hearing to explore that reason: the state case came to a halt because [petitioner's lawyer] asked for a continuance."). Although the petitioner's attorney was a deputy public defender, the Seventh Circuit attributed the delay to

the petitioner rather than the state, reasoning that "there is no constitutional right to counsel on collateral attack," and "errors committed by counsel representing a prisoner on collateral attack are not attributed to the state." *Id.* (citing *Coleman v. Thompson*, 501 U.S. 722, 111 (1991)). It added that the petitioner could fire his lawyer and request a hearing; doing so would require him to "surrender all hope of assistance by the public defender * * *, but as the Constitution does not guarantee the aid of counsel to prosecute a collateral attack, putting a prisoner to a choice between a lawyer and a prompt hearing does not violate the Constitution." *Lane*, 957 F.2d at 365. In *Sceifers*, the Seventh Circuit similarly found that a hearing was unnecessary where the state court record indicated that an eleven-year delay in a post-conviction proceeding "has been caused partially by [a petitioner's] own actions and partially by the uninspired performance of his post-conviction counsel," affirming dismissal for failure to exhaust. *Sceifers*, 46 F.3d at 704 (7th Cir. 1995).

### III.  Analysis

#### A.  The State's Motion to Dismiss for Failure to Exhaust

The Court notes at the outset that the Illinois Supreme Court's denial of Petitioner's habeas petition does not satisfy the exhaustion requirement. Petitioner may collaterally attack his convictions in the Circuit or Appellate Courts, and, most important here, his direct appeals are pending. See *Dupree v. Jones*, 281 F. App'x 559, 560 (7th Cir. 2008); *Crump v. Lane*, 807 F.2d 1394, 1396 (7th Cir. 1986); *Brzowski*, 2013 WL 3199835, at *3.

Turning to Petitioner's direct appeals, the Court notes that both appeals have been pending for almost three years. Given that the Seventh Circuit has considered a seventeen-month delay to be inordinate, see *Dozie*, 430 F.2d at 638, the Court assumes for present purposes that the delay here meets that prong of the test and proceeds to consider whether the delay is justifiable.

5

Respondent argues that the delay is justifiable under *Lane* and *Sciefers* because it is attributable in significant part to OSAD's requests for extensions. The Court disagrees. *Lane* and *Sciefers* addressed delays caused by petitioners' counsel on collateral attack, where petitioners had no right to counsel. Requests for extensions on direct appeal, where an indigent defendant does have a right to counsel, are distinguishable. See Ill. Const. art. VI § 6 (providing that a defendant is entitled to a direct appeal as a matter of right); *Douglas v. California*, 372 U.S. 353, 357 (1963) (holding that where there is a right to a direct appeal, an indigent defendant has a right to counsel). Accordingly, as Judge Kennelly has cogently explained,

> [b]ecause the state must provide [a petitioner] with counsel, the "ultimate responsibility for such circumstances" as the heavy caseload of the OSAD "must rest with the government rather than with the defendant." *Barker v. Wingo*, 407 U.S. 514, 531 (1972); *see also Green v. Washington*, 917 F. Supp. 1238, 1273 (N.D. Ill. 1996). To hold otherwise would hold indigent defendants responsible for conditions and decisions over which they have no control and would violate due process by putting them in a worse position than non-indigent defendants. *See Evitts v. Lucey*, 469 U.S. 387, 393 (1985).

*U.S. ex rel. Brown v. Shaw*, 2009 WL 5166220, at *3 (N.D. Ill. Dec. 21, 2009) (footnote omitted).[1]

Even so, the Court declines to review the petition on the merits at this time. The two main causes of delay attributable to the state—preparation of the record and OSAD's requests for extensions—have been resolved, and both appeals are fully briefed. Petitioner has requested oral argument (presumably concluding that the benefit of an opportunity to present oral argument outweighs the downside of additional delay), and the Appellate Court has indicated that it will schedule the appeals for oral argument on the next available docket call. Because the main causes

---

[1] The time required to prepare the record and report of proceedings also lies beyond a defendant's ability to control. However, given the lengthy trial court proceedings that had to be transcribed by multiple court reporters in these appeals, the delays attributable to those tasks do not seem unusual or unexpected. By contrast, the number of extensions in the briefing schedule suggests that OSAD is grossly understaffed (and likely underfunded).

of delay have been resolved and because the Appellate Court presumably is on the verge of hearing Petitioner's appeals, it would disserve comity to hear Petitioner's habeas petition on the merits at this time. See *Bell v. Robert*, 402 F. Supp. 2d 938, 948 (N.D. Ill. 2005) (declining to find that a failure to exhaust was excused because "even if the past delay was inordinate * * * the state has resolved the delay and Petitioner's appeal is moving forward with reasonable expedition."). Illinois should have the first "full and fair opportunity" to resolve Petitioners' claims, *O'Sullivan*, 526 U.S. at 845 (1999), as state courts "hold the initial responsibility for vindicating constitutional rights. Federal intrusions into state criminal trials frustrate both the States' sovereign power to punish offenders and their good-faith attempts to honor constitutional rights." *Engle v. Isaac*, 456 U.S. 107, 128 (1982). Moreover, on a more logistical level, reviewing Petitioner's petition on the merits would cause parallel litigation, straining already limited judicial resources and risking inconsistent outcomes.

Petitioner is understandably frustrated that he may serve most of his sentence before his direct appeal is decided.[2] But the federal courts cannot be transformed into *de facto* state appellate courts every time a state's resources are strained. Federal habeas review was not designed to create this outcome. See *U.S. ex rel. Wilson v. Rowe*, 454 F.2d 585, 587 (7th Cir. 1971) ("This is an office which federal habeas has not been, and is not intended to be, designed to serve."). Beyond the insult to comity and federalism that would ensue, such a shift would compromise the ability of the federal courts to expeditiously handle their own cases, including criminal cases with constitutionally mandated deadlines. See *Bell*, 402 F. Supp. 2d at 948-49. To be sure, the cases do contemplate circumstances in which an unjustified delay in the state

---

[2] In the federal courts, this situation can sometimes be avoided by granting bond pending appeal if the criteria set out in 18 U.S.C. § 3143(b) are satisfied. It appears that Illinois Supreme Court Rule 609 covers the same subject matter in the state court system. Whether Petitioner pursued relief under Rule 609 is not evident from the record before this Court.

appellate process might cause a delay so egregious that § 2254 excuses exhaustion. But those circumstances are not present here. Where the factors delaying a direct appeal have subsided, a direct appeal is fully briefed, a petitioner has requested oral argument, and the state Appellate Court has indicated that the direct appeal is in the cue for oral argument at the next available opportunity, a federal court should not preempt a state appellate court's review by adjudicating the petitioner's habeas petition on the merits.[3]

### B. Petitioner's Motions

Because this Court declines to hear Petitioner's habeas petition, it denies his motion for release on bond [50]. As noted above, Supreme Court Rule 609 governs release pending appeal in the Illinois courts, which can be sought in either the trial or reviewing court. Petitioner's "Motion for Expedited, Compelled Summary Ruling" [54] also is denied as moot. Finally, Petitioner's motion to strike Respondent's motion to dismiss as untimely [30] is denied. The Court granted Respondent's motion for an extension until September 18, 2014 [24], and the motion to dismiss was timely filed on September 17, 2014 [27].

## IV. Certificate of Appealability

Under the 2009 Amendments to Rule 11(a) of the Rules Governing Section 2254 Proceedings, the "district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Accordingly, the Court must determine whether to grant Petitioner a certificate of appealability pursuant to 28 U.S.C. § 2253(c)(2).

A habeas petitioner does not have an absolute right to appeal a district court's denial of his habeas petition; instead, he must first request a certificate of appealability. See *Miller-El v. Cockrell*, 537 U.S. 322, 335 (2003); *Sandoval v. United States*, 574 F.3d 847, 852 (7th Cir. 2009).

---

[3] In the event that subsequent events undermine the assumptions in this opinion concerning the anticipated time line for resolving Petitioner's direct appeals, Petitioner may seek leave to reinstate his case. See *Brown v. Shaw*, 2009 WL 5166220, at *6.

A habeas petitioner is entitled to a certificate of appealability only if he can make a substantial showing of the denial of a constitutional right. *Miller-El*, 537 U.S. at 336; *Evans v. Circuit Court of Cook County, Ill.*, 569 F.3d 665, 667 (7th Cir. 2009). Under this standard, Petitioner must demonstrate that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Miller-El*, 537 U.S. at 336 (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). And in cases where a district court denies a habeas claim on procedural grounds, the court should issue a certificate of appealability only if the petitioner shows that (1) jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right, and (2) jurists of reason would find it debatable whether the district court was correct in its procedural ruling. See *Slack*, 529 U.S. at 485.

While the Court concludes that federal habeas intervention is not warranted given the current state of Petitioner's state court appeals, the Seventh Circuit has made clear that "[m]any prisoners who seem likely to lose in the court of appeals nonetheless are entitled to certificates of appealability under the statutory standard; meritorious appeals are a subset of those in which a certificate should issue." *Thomas v. United States*, 328 F.3d 305, 308 (7th Cir. 2003). In view of that guidance from the court of appeals, and mindful that the cases cited above do contemplate some circumstances in which an unjustified delay in the state appellate process might cause a delay so egregious that § 2254 excuses exhaustion, the Court concludes that "reasonable jurists" at least "could debate" the outcome of Petitioner's attempt to invoke an exception to the exhaustion rule. *Slack*, 529 U.S. at 484. Accordingly, a certificate of appealability will issue as to that claim.

## V. Conclusion

For the reasons stated above, the Court grants Respondent's motion to dismiss [27] and denies Petitioner's motion to strike the state's motion to dismiss as untimely [30], Petitioner's motion for release on bond [50], and Petitioner's "Motion for Expedited, Compelled Summary Ruling" [54].  A certificate of appealability will issue as to the following issue:  whether the delays in the disposition of Petitioner's state court criminal appeals that are attributable to circumstances beyond the control of the Petitioner have been both inordinate and unjustifiable to render the state corrective process ineffective within the meaning of  28 U.S.C. § 2254(b)(1)(B).

Dated: March 25, 2015

                                                Robert M. Dow, Jr.
                                                United States District Judge